## ROCHESTER PRINTING CO. *v.* KELLOGG *et al.*

(*Supreme Court, General Term, Fifth Department.* January 22, 1892.)

1. SALE—WAIVER OF CONDITIONS.
    A condition in a contract of sale that the seller should deliver the whole of the property sold before the purchasers should become liable to pay any part of the price is waived where, after the failure of the seller to deliver all of such property, the purchasers make payments on the contract.

2. ACTION ON CONTRACT—FINDINGS.
    In an action on the contract of defendants to pay plaintiff's assignor 50 per centum of all moneys received from subscriptions and renewals to their publication until such sum amounted to $3,500, defendants gave no direct evidence of the amount received after the date of their repudiation of the contract, but their answer admitted the amount received before that date, and there was evidence of assertions of defendants, by advertisement and otherwise, that their subscription lists had constantly increased up to the time of the beginning of the action. *Held* that, from such admission and evidence, it was competent for the referee to find that the subscription receipts of defendants before the beginning of the action were sufficient to pay the balance due according to contract.

Appeal from judgment on report of referee.

Action on contract by the Rochester Printing Company, as assignee of A. M. Purdy, against A. B. Kellogg and another. From a judgment for plaintiff

entered on the report of a referee defendants appeal. Affirmed. For former report, see 4 N. Y. Supp. 960.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*George W. Cothran,* for appellants.   *Q. Van Voorhis,* for respondent.

MACOMBER, J.   The plaintiff brings this action as the assignee of Alexander M. Purdy, to recover upon a contract between Purdy and the defendants, bearing date the 2d day of August, 1886. At the time of entering into such contract Purdy was the owner and proprietor of a periodical called the "Fruit Recorder and Cottage Gardener," and the defendants were the owners and proprietors of a publication called "Popular Gardening." By the contract Purdy conveyed to the defendants all his interest in the Fruit Recorder and Cottage Gardener, including all files, electrotypes, subscription lists, records, property, and good-will, and agreed that he would supply to the Popular Gardening, in due season for publication, two pages of practical, valuable, and original editorial matter every month during the continuance of the agreement, for which due credit should be given to him in the columns of the last-named periodical; that he would exert his influence exclusively in the interests of the Popular Gardening, and that he would not, directly or indirectly, connect himself with any other periodical devoted to horticulture or kindred subjects during the same period. The defendants agreed to pay to Purdy, in monthly installments, 50 per centum of all moneys received by them from subscriptions or renewals to the Popular Gardening after the date of the agreement until such sum should amount to $3,500, to advance to him $600 at the time of making the agreement, and a further sum of $75 as a "gratuitous bonus" for the August issue; to give to him, without charge, one column of advertising matter during the continuance of the agreement; to give to him also the use of all name-lists for circulation of his catalogues in exchange for one-half page of advertising in the Popular Gardening.

Upon competent and sufficient evidence, the learned referee has found as a fact that Purdy delivered all of the property belonging to his newspaper to the defendants, except a list of 300,000 names of seedsmen and florists, and the cards on which these names appeared, commonly spoken of as "Ferry Correspondence." His refusal in this instance was placed upon the ground that the duty of turning over such names to the defendants was not included in the agreement. The referee has found that the value of the list of such names was $200, and deducts that sum from the amount unpaid upon the contract.

It was contended upon the trial, and is now argued upon this appeal, that the defendants were not liable upon any portion of the contract until the same had been fulfilled in its entirety by Purdy. Whether this contention be true or not, the evidence establishes the fact, and the referee has so found, that the defendants waived the condition that the whole property owned by Purdy should be delivered before any liability attached to pay any part of the purchase price. Purdy continued to furnish original and valuable editorial matter to the defendants until December 12, 1887, when the defendants wrote to him to the effect that they could not accept his services any longer without compensating him for the same, and that they were to credit to him what he earned, and that the same should be subject to his draft on proper notice. This conclusion seems to have been reached by the defendants after their determination, on or before September 27, 1887, to repudiate the making of any further payments upon the contract, and to refuse to render statements of the receipts of their publication. But, under the evidence, such refusal was wholly unwarranted, and it cannot now be justified upon any legal principle under the facts disclosed.

The evidence, coupled with the admissions made in the answer, shows that before this action was begun the subscription receipts of the defendants

made to the Popular Gardening were sufficient to pay all of the unpaid balance due to Purdy upon the contract. After deducting the commercial value of the list of 300,000 names, above mentioned, and the payment which had been made under the terms of the contract, judgment was ordered for the balance. After considering, and, as we think, properly weighing, the argument of the learned counsel for the appellant, we have come to the conclusion that, under the admissions made in the answer, and on account of the advertisements, statements, and admissions made by the defendants, as disclosed in the evidence, the referee was justified in all of his conclusions of fact. The answer admitted that from August 1, 1886, to December 1, 1887, the receipts from subscriptions and renewals aggregated the sum of $3,865.95; a detailed statement of the items of which was produced upon the trial. The other admissions consist largely of assertions, by advertisement and otherwise, that their subscription lists up to March 1, 1888, when this action was begun, had not fallen off, but had constantly increased. From this evidence it was competent for the referee to adduce the conclusion that the receipts for the last-named period were equal to those during the time covered by the admissions in the answer; particularly as the defendants withheld from the case any explanation or contradiction of their circulars, except in one particular, where the witness, a woman, testified that she had taken charge of all of the moneys received by the defendants from the subscription list of the Popular Gardening since September, 1885, and that she knew the amounts that had been received on subscriptions. She then produced a memorandum, which she had made out, containing the amounts received. That memorandum begins with August, 1886, and ends with November, 1887, and foots up $3,865.95. On cross-examination this witness says she made no figures of the receipts after the last day of November, 1887.

We think, upon the principal question of fact, that, in the absence of any evidence given by the defendants directly bearing upon the amount of the receipts subsequent to December 1, 1887, the evidence upon which the referee has reached his conclusion, though in some respects slight, was sufficient to show that the defendants had received, in the manner pointed out in the written agreement between them and Purdy, a sum of money, 50 per cent. of which amounted at least to the sum of $3,500. It follows, therefore, that the judgment appealed from should be affirmed. All concur.